**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UMOJA ERECTORS, LLC,<br>Plaintiff,<br>vs.<br>NORTH AMERICAN SPECIALTY INSURANCE COMPANY, and D. A. NOLT INC.<br>Defendants. | : | CIVIL ACTION NO.:<br><br>20-cv-05046 |

**COMPLAINT**

The Plaintiff, UMOJA Erectors, LLC ("UMOJA") files the following Complaint against the Defendants D.A. Nolt, Inc. and North American Specialty Insurance Company ("NASIC") (collectively, "Defendants") and states:

**I. PARTIES**

1. The Plaintiff UMOJA Erectors, LLC ("UMOJA") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in 919 Green Lane, Primos, Pennsylvania. UMOJA Erectors is engaged in the business of steel erection.

2. The Defendant D.A. Nolt, Inc.(hereinafter "Nolt") is a corporation organized under the laws of the State of New Jersey with its principal place of business at 53 Cross Keys Road, Berlin, New Jersey. D.A. Nolt, Inc. is engaged in the business of roofing construction.

3. The Defendant North American Specialty Insurance Company (hereinafter NASIC) is a corporation organized and existing under the laws of the State of New Hampshire with its principal place of business in New Hampshire. Among other things, NASIC is engaged in the business of issuing surety bonds, including payment bonds.

## II. JURISDICTION

4. This Court has subject matter jurisdiction over the above-captioned matter pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between Plaintiff and the Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## III. VENUE

5. Venue in this District is proper pursuant to 28 U.S.C. §1391 because the contract upon which this action is based was signed and performed within the territorial limits of the Eastern District of Pennsylvania, and the project to which the action relates is situated within the Eastern District of Pennsylvania, and a substantial part of the events, acts and omissions giving rise to the Plaintiff's causes of action occurred within the Eastern District of Pennsylvania.

## IV. FACTS

6. The facts of this case stem from a general contractor agreement between Nolt, and the Philadelphia Municipal Authority, specifically called the Public Safety Services Campus-Building Façade and Roof Improvement Project," Project No. 11-13-4108-01 ("the Project").

7. In connection with the Project, Nolt executed a payment bond with NASIC (Bond No. 2195249) in the amount of $14,821,198.72.

8. In connection with the Project, Nolt entered into a subcontract ("the Prime Subcontract") with UMOJA regarding the erection of steel on the Project. A true and correct copy of the UMOJA Subcontract is attached hereto as Exhibit "A."

9. In connection with the Prime Subcontract, UMOJA entered into a subcontract with Nolt to coordinate with RCC Fabricators, Inc. (hereinafter "RCC") furnishing all of the fabricated steel and related materials to the Project site. A true and correct copy of the RCC Subcontract is attached hereto as Exhibit "B."

10. Under the Prime Subcontract, UMOJA had two (2) roles, one as the erector of the steel on the site and second as the coordinator of steel to be furnished to the site.

11. UMOJA performed its role as coordinator with its subcontractor, RCC for the supply of fabricated steel. Pursuant to the Prime Subcontract it was to be paid $30,000.00 by Nolt for that function.

12. Over six (6) months, the Plaintiff coordinated the supply of steel to the Project.

13. Under its subcontract with D.A. Nolt, Plaintiff UMOJA was required to pay RCC based on payments received from Nolt for steel supplied to the Project site.

14. Due to Nolt's non-payment of amounts billed and threatened penalties, known as back charges, the Plaintiff has been unable to pay RCC for the steel supplied.

15. In addition, the Plaintiff has performed $272,678.71 worth of steel erection services under the time and materials contract for which it has not been paid by Nolt.

16. Finally, Plaintiff is owed $5,000.00 intended for tax charges by RCC on the subcontracted steel delivery.

17. UMOJA performed all of its work under the subcontract with Nolt in a timely, competent, workmanlike manner, and in full compliance with all applicable requirements.

18. The Plaintiff UMOJA submitted timely invoices for the time and materials work as well as for the steel delivered by RCC.

19. Except for one check, UMOJA has not been paid sufficient funds to pay RCC the $214,000 due under the subcontract.

20. To date, Nolt owes UMOJA $272,678.71, exclusive of interest, penalties, costs and attorneys' fees that is due and owing for time and materials performed under its Prime subcontract.

21. To date, Nolt owes UMOJA $20,737.50 for coordination of the supply of steel to the job site.

22. To date, Nolt owes UMOJA at least $214,537.00 for the steel supplied by RCC, including the sales tax.

23. UMOJA has made continual demands for payment, but Nolt has only threatened back charges and penalties against UMOJA while holding $600,587.39 in retainage.

**COUNT ONE**
**Violation of Prompt Pay Act against D.A. NOLT (73 P.S. §§ 501, et seq.)**

24. UMOJA alleges and incorporates herein by reference all of the allegations contained in the preceding paragraphs 1-23 of this Complaint.

25. Nolt's failure and refusal to pay UMOJA and its refusal to pay UMOJA in a timely manner constitutes violation of Pennsylvania's Contractor and Subcontractor Payment Act, 73 P.S. §§ 501, et seq. (the "Act").

26. Under the Act, UMOJA is entitled to recover interest at the rate of 1% per month, a penalty in the amount of 1% per month from the date payment was due, and all the attorneys' fees and cost incurred to collect the amounts wrongly withheld.

27. With interest and penalties accruing, pursuant to the Act, at the current rate of $2.934.16 per month (each) for a total of 46 months for amounts owed to UMOJA directly.

28. Interest due under the Act totals at least ( $139,971.24) as of today's date.

29. Penalties due under the Act total at least ( $139,971.24) as of today's date.

30. Attorneys' fees and costs due under the Act total at least $5,500.00.

31. Under the Act, the total amount due from Nolt to UMOJA is as follows:

$214,537.00 – For the Fabricated Steel delivery Subcontract with RCC;

$ 20,737.50 – Coordination Fee for the coordination of steel;

$272,678.25 – Time and materials currently invoiced for steel erection;

$ 5,500.00 – Attorneys' Fees;

$783,395.24 - TOTAL DUE

**WHEREFORE**, UMOJA demands judgment in its favor and against Nolt in the amount of $783,395.24 as of today's date, plus continuing prejudgment interest and continuing penalties in an amount to be determined by the evidence, post-judgment interest, ongoing attorneys' fees and costs, and such other relief as the court deems just and equitable.

**COUNT TWO**
**Breach** of Contract against **D.A. Nolt**

32. UMOJA repeats and incorporates herein by reference all of the allegations contained in the preceding paragraphs 1-31 of this Complaint.

33. Pursuant to the terms of the Prime Subcontract, Nolt owes Plaintiff UMOJA $20,737.50 for coordinating the delivery of steel to the job site.

34. Nolt owes UMOJA for the steel supplied to the site by RCC in the amount of $214,537.00 which includes $4,732.00 in sales taxes.

35. Under the Prime Subcontract, Nolt was to pay UMOJA for time and materials for steel erection over the course of the Project.

36. To date, Nolt owes $272,678.71 for time and materials for erection of steel on site to UMOJA.

37. While holding more than $600,000.00 in retainage and $400,000.00 in its account, Nolt has breached the Prime Subcontract, by not paying for the coordination fees, the time and materials, and the steel supplied to the job site.

38. As a direct and proximate result of Nolt's material breach of the Prime Subcontract, UMOJA assesses damages in the principal amount of $507,953.21.

**WHEREFORE**, UMOJA demands judgment in its favor and against Nolt in the amount of $507,953.21 as of today's date, plus continuing prejudgment interest and continuing penalties in an

amount to be determined by the evidence, post-judgment interest, ongoing attorneys' fees and costs, and such other relief as the court deems just and equitable.

**COUNT THREE**
**Unjust Enrichment and Quantum Meruit against D.A. Nolt**

39. UMOJA repeats and incorporates herein by reference all of the allegations contained in the preceding paragraphs 1-38 of this Complaint.

40. Nolt accepted and appreciated the benefits the fabricated steel furnished by RCC and the labor services for the erection of steel on the PSSC Project.

41. By retaining the benefits of the materials furnished without paying for the benefits, Nolt has been unjustly enriched in addition to retaining sums received from the Philadelphia Municipal Authority meant to pay subcontractors.

42. The amount of the unjust enrichment retained by Nolt is equal to the reasonable $214,537.00 value of the materials furnished by RCC, as well as the $293,416.21 in labor services performed by UMOJA, both as the coordinator of the steel delivery and the provider of time and materials.

43. Reasonable value of the materials and the labor services supplied pursuant to the Prime Subcontract and the subcontractor RCC is in the principal sum of $507,953.21 as of today's date.

44. It would be inequitable for Nolt to retain the benefits of the fabricated steel furnished by RCC without payment of their reasonable value, as well as other damages sustained by UMOJA as a result of the non-payment.

**WHEREFORE**, UMOJA demands judgment in its favor and against Nolt in the amount of $507,953.21 as of today's date, plus continuing prejudgment interest and continuing penalties in an amount to be determined by the evidence, post-judgment interest, ongoing attorneys' fees and costs, and such other relief as the court deems just and equitable.

**COUNT FOUR**
**Payment Bond Claim against NASIC (8 P.S. §§191, et seq.00**

45. UMOJA repeats and incorporates herein by reference all of the allegations contained in the preceding paragraphs 1-44 of this Complaint.

46. NASIC, as Surety, issued a Payment Bond ("Bond") number 2195249 in the amount of $14,821,198.72 naming Nolt as the Principal, the Philadelphia Municipal Authority as Obligee, and the City of Philadelphia as Co-Obligee. A true and correct copy of the Bond is attached hereto as Exhibit "C."

47. The Bond is in relation to the subcontracted work performed in connection with the Project.

48. UMOJA, pursuant to the Prime Subcontract with Nolt, contracted with Nolt and performed steel erection services and coordination of steel delivery for the Project.

49. RCC, pursuant to the RCC Subcontract with UMOJA, furnished fabricated steel and other materials to be used on the Project.

50. All of the materials furnished, as well as the labor services performed in a workmanlike manner were of a merchantable quality, and were ultimately accepted by Nolt.

51. Plaintiff UMOJA is a proper Claimant under the Bond.

52. More than 90 days have elapsed since UMOJA provided the services and materials for use in the Project.

53. UMOJA has submitted invoices of $507,953.21 for labor and materials supplied by UMOJA for use in the Project.

54. Those invoices are attached hereto as Exhibit "D."

55. UMOJA has made a $545,851.90 demand for payment of invoices with adjustments to Nolt and to the Surety. See Proof of Claim filed as Exhibit "E."

56. Despite a demand for payment, by Plaintiff UMOJA, the invoices remain unpaid.

57. UMOJA has complied with all conditions precedent to bring this claim on Bond.

58. Pursuant to the Bond, NASIC is liable to UMOJA in the amount of $545,851.90 under the UMOJA Subcontract.

**WHEREFORE**, UMOJA demands judgment in its favor and against NASIC in the amount of $545,851.90 as of today's date, plus continuing prejudgment interest and continuing penalties in an

amount to be determined by the evidence, post-judgment interest, ongoing attorneys' fees and costs, and such other relief as the court deems just and equitable.

LAW & ASSOCIATES, L.L.C.

BY:________________________________

Tsiwen M. Law, Esquire
Counsel for Plaintiff, UMOJA Erectors, LLC
1628 J.F.K. Blvd., Suite 400
Philadelphia, PA 19103
(215) 571-0500

**VERIFICATION**

Tsiwen M. Law deposes and says as follows:

1. I am the attorney for Umoja Erectors, LLC.

2. I am authorized by the Umoja Erectors LLC to enter into this Affidavit.

3. The foregoing facts in Umoja Erector, LLC's Complaint are true to the best of my knowledge, information and belief.

4. I am aware and hereby certify that this Verification is made pursuant to 18 U.S.C. §1621 relating to unsworn falsification to authorities.

Tsiwen Law on behalf of
UMOJA ERECTORS, LLC

# EXHIBIT "A"




# SUBCONTRACT

This Subcontract, made this 6th day of June, 2016 by and between Umoja Erectors, LLC (924-26 N. 19th Street, Philadelphia, PA 19130), hereinafter called the Subcontractor, and D.A. Nolt, Inc. (53 Cross Keys Road, Berlin, NJ 08009), a New Jersey corporation, hereinafter designated the General Contractor,

## WITNESSETH:

That for and in consideration of the mutual promises and covenants herein contained, the Subcontractor and the Contractor agree as follows:

**Section A.** The Subcontractor covenants, promises and agrees to furnish all material (see Exhibit A) and personal property of every description, and to diligently and fully perform all work hereinafter described for the construction of Public Safety Services Campus – Building Façade and Roof Improvements (Bid No. 4180GCON-E), herein after called the Project, to be located at 4601 Market Street, Philadelphia, PA, for the use and benefit of the City of Philadelphia/Philadelphia Municipal Authority, hereinafter designated the Owner; in strict accordance with the Contract/Purchase Order between the Contractor and the Owner dated August 20, 2015 and the Assignment/Contract with the Philadelphia Municipal Authority (PMA), all of which are hereby made a part of this Subcontract by reference.

**Section B.** The Subcontractor agrees to furnish all necessary management, supervision, labor, materials, tools, supplies, equipment, engineering, and/or any other act or thing required to diligently and fully perform and complete those portions of the work described in Exhibit "A," attached hereto and hereby made a part of this Subcontract.

**Section C.** The Contractor agrees to pay the Subcontractor for the full, and complete performance of this Subcontract in the Amount of Two Hundred Forty Four Thousand Five Hundred Thirty Seven Dollars ($244,537), plus Labor and Material Rates (see rates in Exhibit A), which will be tracked for all on site work and must documented with Contractor's Superintendent, subject to additions and deductions for changes agreed upon in writing determined as hereinafter set forth; and further agrees to make all partial and final payments on account thereof solely and in accordance with the terms and provisions of the Subcontract Documents.

**Section D.** General Provisions

**Article 1. Definitions**

1.1 The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project.

1.2 The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or





instruments of like effect.

1.3 The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments or addenda incorporated herewith and referred to herein.

1.4 The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract.

## Article 2. Duties of the Subcontractor

2.1 The Subcontractor is bound to the Contractor by the same terms and conditions by which Contractor is bound to the Owner under the Contract.

2.2. Subcontractor agrees to submit a list of any proposed sub-subcontractors for approval by the Contractor and Owner, and Subcontractor shall not delegate, or further subcontract to others the performance of any of his obligations or work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.

2.3.1 Subcontractor hereby warrants that he has investigated and familiarized himself with all laws and codes applicable to his work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc.; with the prevailing wage scales, union benefits and working conditions, craft jurisdictions, existing labor agreements; all site considerations and restrictions, underground conditions, prevailing weather and climatological conditions; and any other factors which may affect Subcontractor's work. Subcontractor hereby acknowledges that Contractor is relying upon Subcontractor's expertise and investigation in awarding this Subcontract to Subcontractor and in permitting Subcontractor to perform on the Project.

2.3.2 Subcontractor further agrees that Contractor shall not be liable to Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from Subcontractor's failure to investigate and familiarize himself with the conditions under which this Subcontract is to be performed.

## Article 3. Integration

3.1 This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and Contractor if any. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto.

## Article 4. Payment

4.1.1 Provided Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor on the subcontractor pay estimate form in an amount equal to 95% (5% retainage) of the estimated value of work and materials incorporated into the Project (and of materials delivered to the Project site and suitably stored by the Subcontractor) and paid to Contractor by Owner, less the aggregate of previous payments, within fourteen (14) days of



P.D. 11/14/16 [initials] 11/14/16

receipt thereof from the Owner.

4.1.2 Subcontractor recognizes that payment from the Owner to the Contractor for the Subcontractor's labor and materials is a condition precedent to payment from the Contractor to the Subcontractor. By entering into the Subcontract, Subcontractor agrees to bear the risk of non-payment by the Owner

4.1.3 Within ten (10) days of execution, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its work. This schedule, when approved by the Contractor, shall be used as the basis for making payments.

4.1.4 On a monthly basis, the Subcontractor shall submit a request for partial payment consistent with the schedule of values and representing a true and accurate estimate of the work completed during the immediately proceeding pay period. When required by the Contractor, Subcontractor shall provide an accurate inventory of materials suitably stored at the job site. Each application shall be accompanied by such invoices, vouchers, waivers, certifications and affidavits as may be required by the Owner and/or the Contractor. The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to Subcontractor.

4.1.5 No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to acquire fulfillment of all the terms of this Subcontract.

4.1.6 The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment.

4.2 Contractor reserves the right to issue joint checks to Subcontractor and its materialmen, suppliers or subcontractors, or any of Subcontractor's creditors having potential lien rights against the work.

4.3 The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to Contractor from the Subcontractor.

4.4 In the event Subcontractor is proven to be in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any surety, arising from Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor.

4.5 Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, Contractor shall not be obligated to make payments to Subcontractor under this Subcontract:

a) when such payment will leave a balance which is less than the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for





labor, materials, tools, etc. furnished or to be furnished by Subcontractor in the performance of its work;

b) when Subcontractor is or with reasonable probability (as determined by the Contractor) may become unable to comply with or completely perform this Subcontract;

c) whenever the Contractor, in his sole discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor;

d) pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any work rejected if not conforming with this Subcontract or the Subcontract Documents.

4.6 The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request.

**Article 5. Final Payment**

5.1 Final payment will be made within thirty (30) days after the Subcontractor's work has been completed to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the work. Final payment is subject to Contractor's determination that all the requirements of the Subcontract have been met and discharged by Subcontractor.

5.2 No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract.

5.3 Subcontractor recognizes that final payment from the Owner to the Contractor for the Subcontractor's labor and materials is a condition precedent to payment from the Contractor to the Subcontractor. By entering into the Subcontract, Subcontractor agrees to bear the risk of non-payment by the Owner.

**Article 6. Financial Condition of Subcontractor**

6.1 N/A

**Article 7. Assignment of Proceeds**

7.1 The Subcontractor will make no assignment of the proceeds of this Subcontract without prior written notification to Contractor and without the prior written consent of the Contractor, which consent shall not be unreasonably withheld.

7.2 The Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor.

7.3 The Contractor shall not be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing Subcontractor hereunder.



F.D. 11/14/18 [initials] 11/14/18

7.4 By making an assignment of the proceeds hereof, the Subcontractor waives any claims against Contractor resulting from Contractor's continued payment to assignees or former assignees, notwithstanding notification to Contractor of termination of any such assignment.

7.5 By making an assignment of the proceeds hereof, Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to Subcontractor and Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

Article 8. <u>Unit Price Basis</u>

8.1 If the terms of this subcontract provide for the payment of work performed on a unit price basis, the unit of measurement for payment shall be one for work certified. Verification of weights or quantities will be furnished at the time of delivery. In the event the parties fail to agree on the actual quantities of the work performed, Contractor shall have the right to measure and make final settlement on the basis of such measurement of the work performed.

Article 9. <u>Equipment and Facilities</u>

9.1.1 The Subcontractor shall provide at his own expense whatever tools; machines; equipment; plant; utilities; services; storage sheds; workshops; offices; first aid or emergency treatment facilities and any other facility he may deem necessary for the complete performance of all work required under this Subcontract, and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the work. Consistent with Exhibit A, Contractor shall reimburse Subcontractor for certain purchases of Materials and Equipment. Any Materials and Equipment purchased by the Subcontractor that the Subcontractor is reimbursed for by the Contractor shall become the ownership of the Contractor at the end of the project (except for rented equipment).

9.1.2 If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, Subcontractor shall pay an equitable portion of the cost thereof. The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from Subcontractor's use of such facilities.

Article 10. <u>Submittals</u>

10.1.1 The Subcontractor agrees to submit, in sufficient number, all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the performance of this Subcontract as directed by the Contractor within fifteen (15) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor.

10.1.2 Approval of any of the foregoing by the Contractor, the Owner or the





Owner's authorized agent shall under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent.

10.2 The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract.

Article 11 **Materials Furnished by Contractor**

11.1 It is hereby agreed by Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by Contractor, that the following costs, without restriction, are to be fully recovered by Contractor from Subcontractor:

a) the full cost of materials required to replace due to damage by the Subcontractor;

b) the full cost of removing rejected materials when not properly installed or supplied by Subcontractor;

c) the full cost of altering any work of Subcontractor not accepted by the Owner's authorized agent.

Article 12. **Cutting, Patching and Blocking**

12.1 N/A

Article 13. **Maintenance of Site**

13.1.1 Subcontractor agrees to keep the premises and all finished work clean at all times and to remove from the site all scrap and waste materials resulting from his work under the Subcontract within twenty-four (24) hours after receipt by him from Contractor of written notice to do so.

13.1.2 The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the work required under this Subcontract, and Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of his own work.

13.2 Subcontractor further agrees to furnish protection at all times for his own work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage of any kind to or in the connection with said work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused solely by the negligence of the Contractor and is subject to recovery under such applicable insurance policies as may be in effect.

13.3 If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and Subcontractor, on demand therefore, shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover Contractor's supervision, insurance, tax and overhead.





**Article 14. Payment to Suppliers and Sub-Subcontractors**

14.1 Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify Contractor and Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred.

14.2 The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

**Article 15. Warranties**

15.1 The Subcontractor warrants and guarantees the work and materials which he performs or furnishes under this Subcontract and agrees to make good, at his own expense, any defect in materials or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner. Unless otherwise noted in the contract documents, the Subcontractor shall provide an acceptable One (1) Year Warranty for the date of final acceptance of the Subcontractor's work by the Owner or the date of Substantial Completion for the Project, whichever is later.

15.2 The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been canceled as a result of the Subcontractor's operations in performance of this Subcontract.

**Article 16. Time of Performance**

16.1.1 Time is of the essence.

16.1.2 The Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the work undertaken hereunder in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

16.1.3 If the Contractor is making use of a schedule on the Project, it is Subcontractor's responsibility to obtain and follow that schedule and all amendments and updates thereto. Subcontractor hereby agrees to assist the Contractor in creating and updating the construction schedule as needed. Subcontractor acknowledges that any schedule provided by





Contractor during the bidding process may not be the schedule governing the Project.

16.1.4 Upon Contractor's request, Subcontractor shall furnish such evidence as the Contractor may require relating to Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided.

16.2 The Subcontractor agrees to notify the Contractor of his objection to, or inability to comply with, any directive, notification, order, schedule or revision thereof dealing with the time or times of his performance hereof, and to do so within three (3) days of Contractor's issuance thereof.

16.3 Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

16.4.1 In the event of any failure of Subcontractor to complete his work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all <u>actual and/or</u> liquidated damages that may be assessed against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision.

16.4.2 Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, directly or indirectly, attributable to or caused by the Subcontractor.

16.5.1 In the event Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other Subcontractors, Subcontractor may submit to the Contractor a written request for an extension of time for the performance of same. This extension of time shall be Subcontractor's sole remedy for any delay. Subcontractor shall not be entitled to any monetary damages for delays on the project.

16.5.2 No allowance for an extension of time shall be claimed by the Subcontractor unless the Subcontractor shall have made written request upon the Contractor for such extension within three (3) days after the cause for such extension first occurred or within sufficient time to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like requests, whichever is shorter. The Contractor will not grant an extension to the Subcontractor on account of any request not timely or properly presented or until it is allowed by the Owner.

16.6 The Subcontractor hereby agrees that the progress of its work shall not be delayed by any labor disputes including picketing or labor strikes against the Subcontractor or any other subcontractors or contractors on the Project. Failure to maintain progress shall be deemed a default and subject the Subcontractor to the terms of the Default provisions of this Subcontract.

## Article 17. <u>Changes in Work</u>

17.1 Contractor may at any time, by written order and without notice to surety, make changes in the work herein contracted for and Subcontractor shall proceed with the work as directed. If said changes cause an increase or a decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made and this Subcontract





shall be modified in writing accordingly. Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the work as changed. Mark-up on any additional work is limited to 15% for overhead and profit.

**Article 18. Claims for Extra Work, Changed Conditions, Etc.**

18.1 The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on alleged extra work, changed conditions or any other grounds within three (3) days of the discovery of the condition causing the need for additional compensation or damages or within sufficient time to permit Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, whichever is shorter. The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner. No interruption, cessation or delay in the commencement of the work or in the progress thereof, from any cause whatsoever, shall relieve the Subcontractor of its duty to perform or give rise to any right to damages or additional compensation from the Contractor except to the extent that reimbursement is received from the Owner by the Contractor therefor, and the Subcontractor hereby expressly waives and releases any other right to damages or additional compensation.

18.2 If the Subcontractor encounters any condition whatsoever upon which he may base a claim for extra compensation, extra time, or any other type of claim, it shall be his duty to give written notice to the Contractor prior to commencing any work involving said condition in order to allow the Contractor to inspect said condition and to take such steps as Contractor deems necessary. In the absence of such notice to the Contractor, Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition.

**Article 19. Disputes**

19.1.1 In the event of any dispute between the Contractor and the Owner which involves the work required to be performed by Subcontractor under this Subcontract, or in the event of any dispute between Contractor and Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, Subcontractor agrees to be bound to Contractor and Contractor agrees to be bound to Subcontractor to the same extent that Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not Subcontractor is a party to the proceedings before said person, agency or court.

19.1.2 If any dispute or claim is prosecuted or defended by the Contractor and Subcontractor is directly a party or litigant, Subcontractor agrees to cooperate fully with Contractor and Subcontractor shall hire their own attorney to represent their interests in subject dispute or claim. If subcontractor does not hire their own attorney in a reasonable amount of time the Subcontractor shall pay or reimburse Contractor for all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.



F.C. 11/14/16 [initials] 11/19/16

19.1.3 It is expressly understood and agreed in connection with the determination of such claim or disputes that Contractor shall never be liable to Subcontractor to any greater extent than Owner is liable to Contractor.

19.2 In the event of any claim or dispute between Contractor and Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with the performance of work required to be performed under this Subcontract.

Article 20. **Default**

20.1.1 In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability (as determined solely by Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality or fails in any respect to prosecute the work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the work of the Contractor or other subcontractor of Contractor; or in the event Subcontractor abandons his work, or any part thereof; and such failure, inability or deficiency (as determined solely by Contractor) is not corrected within three days after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the work, immediately and without notice to Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

20.1.2 The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article:

a) the filing of a petition in bankruptcy or the petition for the appointment of a receiver by or against the Subcontractor;

b) the insolvency of the Subcontractor or his inability to meet his debts as they mature;

c) the establishment of a receivership or any committee of creditors involving Subcontractor's business or assets, or the making of an assignment for the benefit of Subcontractor's creditors; or

d) the failure or refusal of Subcontractor to respond to any written order or notice duly issued by the Contractor.

20.1.3 Subcontractor hereby waives any and all defenses, claims or causes of action against Contractor based in whole or in part on the contention that Subcontractor would have been able to comply with the Subcontract.

20.2 N/A

20.3.1 Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the work has been completed and accepted by the Owner and payment therefore has been received by the





Contractor from the Owner.

20.3.2 If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor and the Contractor shall have a lien upon all material, tools, and equipment taken possession of to secure the payment thereof.

20.3.3 With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses. Contractor's general overhead as allocated to the work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well on the amount of claims paid by Contractor for Subcontractor or for which it deems itself liable.

20.4 In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

## Article 21. Coordination

21.1 The Subcontractor agrees to perform the work called for in this agreement in such a manner that he will not injure or damage any other work performed by the Contractor or any other subcontractor.

21.2 The Subcontractor further agrees to cooperate with the Contractor and other subcontractor's whose work might interfere with the Subcontractor's work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference.

## Article 22 Indemnification

22.1 To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Owner and the Contractor, and any others required by the Contract Documents, and their parent, subsidiary, and affiliated companies, and each of their respective officers, directors, shareholders, members, employees, and assigns, as applicable (individually, an "Indemnified Party," collectively, "Indemnified Parties"), from and against any and all liabilities (including but not limited to contractual liabilities), claims (even if such claims are groundless, false or fraudulent), losses, damages, penalties, fines, settlements, costs, and/or expenses (including but not limited to court costs and reasonable attorneys' fees), attributable to injury (including but not limited to sickness, disease, or death) to any person (including but not limited to the Subcontractor's employees) and/or damage to any property of whatsoever kind or nature, arising out of or relating to the execution of the Work, or preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise, or other directives from the Contractor, or the design, manufacture, delivery, installation, use, misuse, maintenance, erection, repair, operation, or failure of any part of all of the goods, materials,





machinery, and/or equipment (even if such was furnished, rented, or loaned by any of the Indemnified Parties), including when the active or passive negligence of an Indemnified Party is alleged or proven, or upon any alleged breach of any statutory duty or obligation on the part of an Indemnified Party. However, the Subcontractor's obligations under this Article 22.1 shall not extend to property damage or personal injury (including death) caused by the sole negligence of an Indemnified Party seeking indemnification.

22.2 In the event and to the extent that a claim is made by an employee of the Subcontractor against an Indemnified Party, the intent of this Article is that the Subcontractor shall, and it hereby agrees to, defend, indemnify, and hold harmless the Indemnified Party to the same extent as if the claim was made by a non-employee of the Subcontractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity provision fully enforceable, the Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification, and consents to a cause of action for indemnity.

22.3 The Subcontractor's obligation to defend the Indemnified Parties under this Article is in addition to the Subcontractor's obligation to indemnify and hold harmless the Indemnified Parties. The Subcontractor shall, at the Subcontractor's expense, defend an Indemnified Party against any claim, whether asserted in a proceeding, action at law, in equity, in arbitration, or otherwise, containing any allegation(s) that may potentially give rise to the Subcontractor's obligation to indemnify an Indemnified Party under Article 22.1 and/or Article 22.2 above. The Subcontractor shall retain an attorney to represent such Indemnified Party, provided, however, that any attorney employed in such defense must be satisfactory to the Indemnified Party. The Subcontractor's obligation to defend an Indemnified Party shall continue until such time as it is determined by court or arbitrator(s), through all appeals and/or the expiration of applicable appeal periods, that the Subcontractor is not obligated to provide such defense.

22.4 If there are any damages or claims of any kind or nature that have not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor, final payment under the Subcontract, and acceptance of the Work shall be deferred until all such claims shall have been paid, settled, adjusted, or suitable coverage or indemnity (including but not limited to a bond) acceptable to the Contractor is provided by the Subcontractor or the Subcontractor's insurance carrier.

22.5 N/A

22.6 The Subcontractor's indemnity obligations under this Article shall also specifically include, without limitation, all fines, penalties, damages, liability costs, expenses (including. without limitation, reasonable attorneys' fees), and punitive damages (if any) arising out of , or in connection with, any: (i) violation of or failure to comply with any law, statute, ordinance, rule, regulation, code or requirement of a public authority that relates to or bears upon the performance of the Work by the Subcontractor, its subcontractors, or any person or entity for whom either is responsible, including, but not limited to, any environmental conditions or hazardous materials, (ii) means, methods, procedures, techniques, or sequences of execution or performance of the Work, and (iii) failure to secure and pay for permits, fees, approvals, licenses

and inspections as required under the Subcontract, or any violation of any permit or other approval of a public authority applicable to the Work by the Subcontractor, its subcontractor, or any person or entity for whom either is responsible.

**Article 23. Elimination or Reduction of Work.**

23.1 In the event of elimination or reduction of the work to be performed under this Subcontract by reason of termination or modification of the Contract Documents or a change in the work to be done thereunder, either in accordance with the terms of the Contract or the Contract Documents or by default by Owner, Subcontractor shall not be entitled to recover from Contractor more than his fair and equitable portion of any sums received by Contractor for work done or materials supplied by this Subcontractor on this Subcontract. The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining Subcontractor's fair and equitable share.

**Article 24. Collective Bargaining Agreements**

24.1 Subcontractor shall comply with, observe and be bound by all terms and provisions of any collective bargaining agreements executed by Contractor or on Contractor's behalf.

24.2 Subcontractor shall indemnify and save Contractor harmless from and against any claim, including court costs and attorney's fees, resulting in any manner whatsoever, from Subcontractor's failure to comply with the provisions of this article of this Subcontract.

24.3 In the event Subcontractor fails or refuses to comply with, observe or be bound by any term or provision of any such collective bargaining agreements and does not correct such failure or refusal within 24 hours after notice thereof is furnished to Subcontractor by Contractor, Subcontractor shall be deemed to be in default of this Subcontract.

**Article 25. Permits and Compliance with Law**

25.1 Subcontractor shall obtain and pay for all permits, licenses and official inspection made necessary by his work and shall comply with all laws, ordinances and regulations bearing on the work required under this Subcontract.

25.2 The Subcontractor shall strictly observe and comply with all applicable safety laws, rules and regulations, and with the accident prevention program required by the Contractor.

**Article 26. Independent Contractor**

26.1 The Subcontractor certifies that he is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

**Article 27. Employees**

27.1 The Subcontractor shall not employ any person in performance of this



P.O. 11/14/16 11/14/16

Subcontract whose employment might be reasonably objected to by the Contractor or Owner and hereby agrees to promptly remove from the Project any such person or party.

**Article 28. Notice**

28.1.1 Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or by electronic mail. The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.

28.1.2 Personal delivery is complete when the notice is delivered to the office address of the Subcontractor appearing in this Subcontract. .

28.1.3 When mail is used, delivery is complete on the date first occurring among the following: a) on the day the communication is received by Subcontractor evidenced by a return receipt furnished by the United States Post Office Department or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at his last known address.

**Article 29. Superintendent**

29.1 The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor. Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of work under this Subcontract.

**Article 30. Subcontractor's Dealings with Owner**

30.1 It is agreed that all of Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other parties named in the Contract Documents shall be through the Contractor.

30.2 The Subcontractor further agrees that he shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

**Article 31. Contributions, Taxes and Insurance**

31.1 The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes or insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by Subcontractor on work performed pursuant to the terms of this Subcontract.

31.2 Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, and all other taxes, and/or tax



P.C. 11/14/16 11/14/16

the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party.

34.3 At any time during the course of the Project, Contractor has the right to request that the Subcontractor provide the Contractor with a list of all subcontractors, suppliers and laborers of Subcontractor and all monies due and owing by Subcontractor to each of these entities at the time of the creation of the list. Subcontractor must provide such information within three (3) days after Contractor's request.

**Article 35.** **Contractor and Subcontractor Payment Act**

35.1 N/A

35.2 N/A

**Article 36.** **Applicable Law**

36.1 The law of the state where the project is located shall be applicable to this Contract and shall be used to decide any dispute related to this Contract.

**Article 37.** **Determination of Disputes**

37.1 In any instance in which a claim exists between the Contractor and Subcontractor, the claim shall be subject to non-binding mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party. Prior to the mediation the parties agree to an exchange of documents pursuant to requests for production of documents. The mediation shall be presented to the American Arbitration Association pursuant to the mediation rules then in effect. The cost of the mediation shall be shared evenly by both parties. Unless otherwise agreed, the mediation shall take place in Philadelphia, Pennsylvania.

37.2 Claims not resolved by mediation shall, at the sole and exclusive option of Contractor, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. Notwithstanding the current rules of the American Arbitration, the parties agree to limited discovery including the exchange of documents pursuant to requests for production of documents and the taking of depositions of the other party's representatives. Unless prohibited by law or otherwise agreed to by the parties, the arbitration shall take place in Philadelphia, Pennsylvania.

37.3 A demand for arbitration shall be made within the date when institution of legal or equitable proceedings based on such claim would be barred by the applicable statute of limitations.

37.4 In the event the Contractor elects to resolve any claim through the institution of litigation, the proceeding shall be filed in any state or federal court having jurisdiction over the parties and the claim.



P.D. 11/14/16 11/14/16

assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by Subcontractor relating to all work performed under this Subcontract.

## Article 32. Insurance

32.1 Subcontractor shall provide and maintain at all times during the performance of this Subcontract workmen's compensation and employer's liability insurance for protection of Subcontractor's employees, as required by law; and insurance covering public liability, property damage and Subcontractor's Contractual liability hereunder (including but not limited to all work performance and operation of automobiles, trucks and other vehicles, the values of which are itemized in Exhibit A) in amounts of not less than $2,000,000.00 per occurrence against liabilities for damages because of injuries, including death, suffered by persons other than employees of Subcontractor and in an amount of not less than $5,000,000.00 per occurrence against liability for damage to property, all of which insurance coverage shall be for the purpose of protecting Subcontractor, Contractor, Owner and other third parties.

32.1.2 All insurance required hereunder shall be maintained in full force and effect in a company or companies satisfactory to Contractor, at the Subcontractor's expense, and until performance in full hereof has been accomplished and final payment has been issued in evidence thereof. Further, such insurance shall be subject to the requirement that Contractor must be notified by thirty days written notice before cancellation of any such policy. In the event of the threatened cancellation for non-payment of premium, Contractor may pay the same for Subcontractor and deduct the said payment from amounts then or subsequently owing to the Subcontractor hereunder.

32.1.3 Certificates of insurance must be filed with the Contractor within thirty days of the date of execution of this Subcontract. No payment shall be considered due and owing hereunder until certificates of insurance satisfactory to the Contractor have been received in his office.

## Article 33. Effective Date

33.1 The effective date of this Subcontract is intended by both parties to be the date indicated at the beginning of this Subcontract. The dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

## Article 34. Wavier of Liens and Releases

34.1.1 N/A

34.1.2 N/A

34.2 The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontract work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to final payment,



P.O. 11/14/16 CCC 11/14/16

Article 38. Termination by Contractor for Convenience

38.1 The Contractor may, at any time, terminate the Contract for the Contractor's convenience and without cause.

38.2 Upon receipt of written notice from the Contractor of such termination for the Contractor's convenience, the Subcontractor shall:

.1 cease operations as directed by the Contractor in the notice;

.2 take actions necessary, or that the Contractor may direct, for the protection and preservation of the Work; and

.3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into further subcontracts and purchase orders.

38.3 In case of such termination for the Contractor's convenience, the Subcontractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

This Agreement is entered into as of the day and year first written above.

**D.A. Nolt, Inc.**

(Signature)

Richard O'Brien Vice President

(Printed Name and Title)

**Umoja Erectors, LLC**

(Signature)

Albun H. Brown President 11/14/16

(Printed Name and Title)



R.O. 11/14/16 (illegible initials) 11/14/16

**EXHIBIT A**
**THE WORK**

1. The Subcontractor agrees to furnish all necessary management, supervision, labor, material, tools, supplies, equipment, plant, services, sundries, appurtenances, engineering, testing and/or any other act or thing required to diligently and fully perform and complete those portions of the work described, but not limited to, the following:
   a. The work of this subcontract includes, but is not limited to, all labor, materials and equipment required for the supply, fabrication, erection, layout, coordination, and installation of all the steel, framing, screen wall, bracing, ladders, grating/stairs, fall protection anchors, and all related miscellaneous components and hardware required for the installation of complete systems.
   b. Subcontractor shall invoice (in addition to the subcontract amount on Page 1) General Contractor for field labor only and shall not include labor required for coordination, as this is included in the lump sum subcontract amount.
      i. Labor Rate IRON WORKER FOREMAN = $105 per hour.
      ii. Labor Rate IRON WORKER JOURNEYMAN = $100 per hour.
      iii. Labor Rate IRON WORKER 2nd Year APPRENTICE = $83.80 per hour.
   c. Subcontractor shall coordinate all steel fabrication and erection work, and be responsible for layout and verification of field dimensions prior to fabrication.
   d. Subcontractor shall coordinate the fabrication with and procure all steel from RCC Fabricators, Inc. (Southampton, NJ). This shall include, but not be limited to, Bracing, Drainage Roof Frames, Equipment Support Roof Steel, Roof Support Steel, Penthouse Roof Framing, Decking, Screen Wall Framing, Roof Stair & Grating and all required hardware.
   e. Subcontractor shall coordinate all testing and inspections for their work. General Contractor shall pay for Third Party Inspections.
   f. Subcontractor shall be reimbursed at the rate of <u>COST PLUS 10%</u> for certain materials needed to complete the work. These shall include and be limited to: welding wire, hoisting equipment, drill bits, grinder wheels, abrasive wheels, burning equipment, and safety equipment.
      i. Any Materials and Equipment purchased by the Subcontractor that the Subcontractor is reimbursed for by the Contractor shall become the ownership of the Contractor at the end of the project (except for rented equipment).
   g. General Contractor shall provide a lift and crane for Subcontractors use, as needed for the work.
   h. General Contractor shall furnish ladders and fall protection anchors for installation by Subcontractor.
   i. Subcontractor shall provide all submittals, including signed and sealed shop drawings (plans, piece drawings, erection drawings, etc.) and calculation by a Pennsylvania Professional Engineer. Subcontractor shall utilize the services of RCC Fabricators for the procurement of all steel shop drawings and calculations and for the fabrication of all steel required on the project.



F.D. 11/4/16 [initials] 11/4/16

**EXHIBIT A (continued)**

j. All work must be performed per the City of Philadelphia, Public Safety Services Campus Building Façade and Roof Improvements Project Manual, Specifications, Drawings, Clarifications, Modifications, Addenda, Appendices and Bulletins.
k. Provide submittals and shop drawings signed and sealed by a licensed PA professional engineer.
l. The work is to follow all Federal, EPA, OSHA, City, State and Local regulations.
m. All work to be performed by properly certified and licensed personnel.
n. Supply, set-up and install all equipment needed to access and complete the work. General Contractor shall provide a crane and operator, but it is the subcontractor's responsibility to provide qualified rigging and signaling personnel.
o. Protect all existing conditions from damage.
p. The project includes the Steel Procurement Act and all steel must be domestically produced.
q. All work to be performed by properly certified and licensed workers.
r. The project requires conformance to and execution of Project Labor Agreement.
s. Conformance to all OEO requirements and Certification of Compliance to Chapter 17-1000 of the Philadelphia Code.
t. All personnel must have an OSHA 10-Hour safety training certification, must complete the safety orientation, must pass a drug & alcohol and must go through the E-Verification process (Act 127) prior to starting work on site.

2. As part of the work specified in Paragraph 1 of this Exhibit, the Subcontractor shall remove his excess materials, including but not limited to, debris, waste materials, rubbish, cartons, crates and packing cases, from the site at reasonable intervals as work progresses in order to keep the project free and clear of all unnecessary debris. If, in the opinion of the site supervisor, Subcontractor has failed to remove debris in a timely fashion, upon 24 hours written notice, Contractor shall, at its option, have any debris removed from the site. Any expenses incurred by Contractor for said removal will be deducted from the subcontract price. All public areas shall be kept clean and free of all obstacles and debris at all times. In the case of high or multi-story buildings, the subcontractor shall put all rubbish into chutes and/or dumpsters that are provided by the contractor.

I. **Insurance Requirements (Unless otherwise defined in the terms and conditions of the OCIP (Owner's Controlled Insurance Policy):**

A. The Subcontractor shall, at its own expense, procure, carry and maintain, during the progress of the Work to be performed under the Subcontract, and until the performance of the Work has been completed and final payment has been issued, insurance from a company with an A.M. Best Rating of "A-" or higher and an A.M. Best Financial Size Category of "Class VII" or higher, with the minimum limits and coverage as follows:

(1) **Commercial General Liability Insurance**: covering all operations by or on behalf of the Subcontractor, to include coverage for Premises, Operations, Mobile



P.C. 11/14/16 11/14/16

**EXHIBIT A (continued)**

Equipment, and Independent Contractors, Broad Form Contractual Liability Coverage (including liability for injuries to the Subcontractor's employees assumed under a contract), Personal and Advertising Injury Coverage, Products and Completed Operations Coverage, and Broad Form Property Damage Coverage. Coverage should be provided pursuant to form CG 00 01 12 04 issued by the Insurance Services Office ("ISO"), or its equivalent.

(a) Occurrence form with the following limits of liability:

| | | |
|---|---|---|
| (i) | General Aggregate | $2,000,000 |
| (ii) | Products and Completed Operations Aggregate | $2,000,000 |
| (iii) | Each Occurrence | $1,000,000 |
| (iv) | Personal and Advertising Injury | $1,000,000 |

(b) The limits for General Aggregate and Products Completed Operations Aggregate must apply on a per project basis. The policy's deductible (or self-insured retention) shall not be greater than $10,000.00.

(c) Products and Completed Operations Coverage must be maintained for a period of at least three (3) years after final payment for the Work.

(d) The policy shall not include endorsement CG 24 26, CG 21 39, or their equivalent.

(2) **Automobile Liability Insurance:**

(a) Coverage to include:
(i) All Owned, Leased, Hired and Non-Owned Vehicles
(ii) Contractual Liability Coverage (including liability for Employee Injury assumed under a contract)

(b) Per Accident Combined Single Limit: $1,000,000

(3) **Umbrella or Excess Liability Insurance:** policy should provide coverage as least as broad as that provided in the underlying policies, and shall apply excess of the Commercial General Liability Insurance, Automobile Liability Insurance and Employer's Liability policies.





**EXHIBIT A (continued)**

(a) Occurrence form with the following limits of liability:

| | | |
|---|---|---|
| (i) | General Aggregate | $4,000,000 |
| (ii) | Products and Completed Operations Aggregate | $4,000,000 |
| (iii) | Each Occurrence | $4,000,000 |
| (iv) | Personal and Advertising Injury | $4,000,000 |

(b) The policy's deductible (or self-insured retention) shall not be greater than $10,000.00.

(c) Products and Completed Operations Coverage must be maintained for a period of at least three (3) years after final payment for the Work.

(d) The policy shall provide liability coverage and full payment of its limits prior to any other coverage maintained by an Additional Insured (as defined below).

(4) **Worker's Compensation and Employer's Liability Insurance**:

(a) Worker's Compensation Coverage with the following limits: Statutory Requirement

(b) Employer's Liability Insurance with the following limits:

| | | |
|---|---|---|
| (i) | Bodily Injury by Accident: | $1,000,000 Each Accident |
| (ii) | Bodily Injury by Disease: | $1,000,000 Each Employee |
| (iii) | Bodily Injury by Disease: | $1,000,000 Policy Limit |

(c) To the extent permitted by law, the policy shall contain a Waiver of Our Right to Recover from Others Endorsement (WC 00 0313) (or the equivalent), and shall name in the schedule for that endorsement all Indemnified Parties (as set forth in Article 22 of the Subcontract).

(5) **Pollution Liability Insurance**: providing coverage for any pollution conditions that may arise from the Work. The policy shall provide coverage for bodily injury, property damage and environmental damage, including cleanup costs arising out of third-party claims for pollution conditions, including claims of environmental authorities for the release of pollutants caused by construction activities related to the Work.



11/14/16 11/14/16

**EXHIBIT A (continued)**

(a) Occurrence form with the following limits of liability:

| | | |
|---|---|---|
| (i) | General Aggregate | $2,000,000 |
| (ii) | Each Occurrence | $1,000,000 |

(b) There shall be no exclusions or limitations regarding damages/injury from the existence, removal or abatement of lead paint or asbestos.

(c) There shall be no insured vs. insured exclusion in the policy.

(d) The policy shall provide coverage for all defense costs, including costs, charges, and expenses incurred in the investigation, adjustment or defense of claims.

(6) **Professional Liability Insurance**: required to the extent that the Work includes any design responsibility.

(a) Claims made or occurrence form with the following limits of liability:

(i) Any one claim, and in the aggregate: $1,000,000

(b) If coverage is provided pursuant to a "claims made" policy form, then Subcontractor must also maintain coverage for a minimum of three (3) years following the completion of the Work.

B. Within seven (7) days of the Subcontractor signing the Subcontract, and in no event later then the start of the Work, the Subcontractor shall provide Contractor with a Certificate of Insurance evidencing the insurance coverage required under this Exhibit, as well as copies of all endorsements or other policy forms evidencing the additional insured coverage required in paragraphs A(1), (2), (3), and (5) of this Section, and no payment shall be considered due and owing under the Subcontract until these documents have been received by the Contractor. Further, upon request of the Contractor, the Subcontractor shall provide full and complete copies of all policies required under this Exhibit.

C. The polices required under this Exhibit shall not be cancelled, materially changed or non-renewed without at least thirty (30) days advance written notice provided to the Contractor. Each policy required under this Exhibit shall be endorsed to require this notification.



11/14/16 11/14/16

**EXHIBIT A (continued)**

D. The insurance coverage required under this Exhibit shall not be construed to be a limitation of the liability on the part of the Subcontractor, or any of its subcontractors. The carrying of the insurance required under this Exhibit shall in no way be interpreted as relieving the Subcontractor of any responsibility or liability under the Subcontract.

E. The failure to carry or keep the insurance policies required under this Exhibit shall be deemed a material breach of the Subcontract.

F. The coverage limits required under this Exhibit are minimum limits only. To the extent that the Subcontractor purchases policies with higher limits, each of the Additional Insureds shall be entitled to coverage up to the actual limits available under those policies.

G. The Subcontractor is required to provide its own property insurance coverage on all materials that are part of the Subcontract until such time as the Contractor accepts the materials. In addition, the Subcontractor is required to provide its own property insurance coverage for its own equipment, materials and tools that are used by the Subcontractor in performing the Work.

H. The Subcontractor shall require that any subcontractors performing Work on its behalf comply with all of the insurance requirements set forth in this Exhibit, and shall include in its contract with any such subcontractor a provision consistent with Section III.

**II. Additional Insured Requirement (Unless otherwise defined in the terms and conditions of the OCIP (Owner's Controlled Insurance Policy):**

Each policy listed in Section I (other than Worker's Compensation and Employer's Liability Insurance, and Professional Liability Insurance) shall contain coverage for additional insureds pursuant to endorsements CG 20 10 07 04 (ongoing operations) and CG 20 37 07 04 (completed operations) issued by the ISO (or their equivalent), and shall name as additional insureds: (i) the Owner, and its parent, subsidiary and affiliated companies, and each of their respective employees, directors, officers, and shareholder, as applicable, (ii) the Contractor, and its parent, subsidiary and affiliated companies, and each of their respective employees, directors, officers, and shareholder, as applicable, and (iii) any other person or entity as required by the Contract Documents (individually as an "Additional Insured," all collectively as the "Additional Insureds"). The coverage for the Additional Insureds under each of the policies shall be primary and non-contributory to any other coverage maintained by the Additional Insureds available to contribute to payment of any loss.





**EXHIBIT A (continued)**

Additional Insured Parties:

1. D.A. Nolt, Inc., its employees, agents and assigns.
2. The City of Philadelphia, its employees, agents and assigns.
3. Philadelphia Municipal Authority, its employees, agents and assigns.
4. Daniel J. Keating Company, its employees, agents and assigns.
5. Ballinger Company, its employees, agents and assigns.
6. Oxford Engineering, its employees, agents and assigns.
7. Provident Renewal Group (SJT/Turner Joint Venture), its employees, agents and assigns.

**III. Waiver of Rights of Recovery and Waiver of Subrogation (Unless otherwise defined in the terms and conditions of the OCIP (Owner's Controlled Insurance Policy):**

The Subcontractor and its respective insurance carriers waive all rights of recovery against the Indemnified Parties (as set forth in Article 22 of the Subcontract) for loss or damage covered by any of the insurance required to be maintained by the Subcontractor pursuant to the Subcontract, and hereby waive all rights of subrogation against the Indemnitees for loss or damage covered by any of the policies of insurance required to be maintained by the Subcontractor pursuant to the Subcontract. If any of the policies of insurance required under the Subcontract require an endorsement to provide the waiver of subrogation, then the Subcontractor shall cause them to be so endorsed and shall attach a copy to the Certificate of Insurance.



P.O. 11/14/16 11/14/16

**EXHIBIT B**

## ENUMERATION OF CONTRACT DOCUMENTS

1. Project Manual (Project #11-13-4108-01) – Public Safety Services Campus – Building Façade and Roof Improvements (Bid No. 4180GCON-E).
2. All Drawings – Public Safety Services Campus – Building Façade and Roof Improvements (Bid No. 4180GCON-E).
3. Design Details and Drawings for the Project.
4. City of Philadelphia Standard Contract Requirements.
5. City of Philadelphia General Conditions and Supplemental Conditions.
6. City of Philadelphia Purchase Order #POXX16000030-02.
7. Contract (#164020) between D.A. Nolt, Inc. and The City of Philadelphia for the Public Safety Services Campus – Building Façade and Roof Improvements (Bid No. 4180GCON-E).
8. Assignment/Contract between D.A. Nolt, Inc. and the Philadelphia Municipal Authority for the Public Safety Services Campus – Building Façade and Roof Improvements.
9. Asbestos, Lead-Based Paint, PCB and Mercury/Metals Survey Report (including Appendices); dated 9/12/13.
10. Lead-Based Paint Inspection and Screening Report (including Appendices); dated 7/14/15.
11. All Addenda, Modifications, Bulletins.
12. PA Prevailing Wage Rates.
13. PA Labor Standards Requirements.
14. Philadelphia Public Projects Labor Agreement.
15. OCIP Program Requirements.
16. Insurance Manual.
17. All Safety Manuals.
18. Statement of Special Inspections.
19. Act 127 E-Verification.
20. Chapter 17-1000 of the Philadelphia Code (Employment of Low or Moderate Income Persons by City Contractors).
21. Affidavit of Slavery Disclosure.
22. Economic Opportunity Plan (EOP).
23. Affirmative Action Requirements and OEO (Office of Economic Opportunity) employment goals.
24. Payroll Certification Form.
25. Partial Release of Liens and Claims Form.
26. Final Release of Liens and Claims Form.



P.O. 11/14/16 CA 11/14/16

Blank



11/14/16 11/14/16