UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UMOJA ERECTORS LLC** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **D.A. NOLT** | : | NO.: 20-05046-GP |
| Defendant. | : | |

## PLAINTIFF UMOJA'S PROPOSED CONCLUSIONS OF LAW

1. On or about June 6, 2016, Umoja Erectors, LLC and Defendant D.A. Nolt, Inc. informally entered into a subcontract for the construction of the Public Safety Services Campus (Bid No. 4180 GCCON-E) otherwise known as the "Project" at 4601 Market Street, Philadelphia, Pennsylvania for the benefit of the City of Philadelphia/Philadelphia Municipal Authority.

2. The City of Philadelphia was the owner of the real estate at 4601 Market Street, Philadelphia, Pennsylvania.

3. Under the scope of work, Umoja Erectors, LLC agreed to "furnish all material and personal property of every description and to diligently and fully perform all work described for the Project pursuant to "Exhibit A."

4. Exhibit "A" specified that the scope of work would include "all labor, materials, and equipment required for the supply, fabrication, erection layout, coordination, and installation of all the steel, framing, screen-wall, bracing, ladders, grating/stairs, fall protection anchors, and all related miscellaneous components and hardware required for the installation of complete systems.

5. In addition to the labor and materials under Exhibit "A," Umoja "shall coordinate the fabrication with and procure all steel from RCC Fabricators, Inc.

6. Under the subcontract Exhibit A, Umoja Erectors was to be paid $30,000.00 for the coordination function of the steel delivery and the Plaintiff was required to "utilize the services of RCC Fabricators for the procurement of all steel shop drawings and calculations and for the fabrication of all steel required on the project."

7. Under Section C, D.A. Nolt agrees to pay Umoja Erectors for the full and complete performance of the Subcontract in the amount of $244,537, plus Labor and Material Rates per Exhibit "A," which (would) be tracked for all on-site work and documented with the Contractor's Superintendent.

8. All of the labor for the erection and installation of steel was covered under the labor rates in Exhibit "A," following the Ironworkers Union collecting bargaining hourly rates.

9. The $244,537.00 covered $209,805.00 for the fabricated steel from RCC Fabricators as well as the $30,000.00 coordination fee to Umoja Erectors for obtaining the approved shop drawings and verification of the field measurements.

10. Under Section C, the only changes to labor and material charges were of "additions and deductions for changes agreed upon in writing determined as hereinafter set forth."

11. D.A. Nolt "further (agreed) to make all partial and final payments on account thereof solely and in accordance with the terms and provisions of the subcontract documents."

12. The "Prompt Pay Act" applies to public works contracts. *E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist.*, 111 A.3rd 220, 232 (Pa. Commw. Ct. 2015) ("the Prompt Pay Act, not CASPA, governs construction contracts between a government agency, such as a school district, and a contractor").

13. The Prompt Pay Act applies to the acts of Umoja Erectors and D.A. Nolt in this case. *Id.* At 232.

14. The Prompt Pay act requires contractors and subcontractors who perform per their contracts to be paid, and allows the contracts themselves to govern performance and payment terms. 62 Pa. C.S. §§3931(b), 3932.

15. If a contractor withholds payment "arbitrar{ily}" or "vexatious{ly}," The Court has discretion to award 1% per month of interest as a penalty. *Id.* §3935(a).

16. "Except as otherwise agreed by the parties," pre-judgment interest is awarded for any successful Prompt Pay Act claim. *Id.* §3932(c).

17. When interpreting contracts under Pennsylvania law, "{t}he fundamental rule … is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).

18. To do so, courts enforce the plain meanings of unambiguous contract terms, interpreting them as a matter of law. *Id*. At 430.

19. When contract terms are ambiguous, "the inquiry focuses on what the agreement manifestly expressed, not what the parties may have silently intended." *Benec v. Armstrong Cement & Supply Corp.*, No. 139 WDA 2016, 2016 WL 6876320, at *3 (Pa. Super. Nov. 22, 2016).

20. Contracts should be read to give effect to all their provisions. *Porter v. Chevron Appalachia, LLC*, 204 A.3d 411, 419 (Pa. Super. 2019) ("in construing a contract, we must give effect to all its provisions and that an interpretation will not be given to one part of the contract which will annul another part of it.").

21. To prove unjust enrichment, a plaintiff must show: (1) it benefited the defendant; (2) the defendant was aware of the benefit; and (3) allowing the defendant to keep the benefit without paying for it would be inequitable. *Commonwealth v. TAP Pharm. Prods.*, 885 A.2d 1127, 1137 (Pa. Commw. Ct. 2005).

22. D.A. Nolt benefired from Umoja's installation of steel, because Defendant received 85.5% of the steel allotment.

23, D.A. Nolt knew that it received 85.5% payment from PMA for the work done without interruption by Umoja Erectors and RCC Fabricators.

24. It would be inequitable for D.A. Nolt to withhold payment for the fabricatefd Steel erected on site without having to pay for it out of money advanced by PMA.

25. Nolt was not permitted to withhold payments of $75,501.00 it owed to Umoja in February and March 2017 under §4.3 of the Umoja subcontract because "any sum due or to become due" references only an agreed-upon payment subject to an external triggering event like a date or schedule.

26. It does not cover a contingent, disputed amount, such as potential backcharges or liquidated damages. See *Charlson's Furniture Co.. for Use of Pers. Disc. Co. v Heigley*, 53 A.2d 878, 880 (Pa. Super. 1947) (limiting judgment for time-bound payment to the amount "due" at the specific time).

27. Sections 4.4 and 4.5 address backcharges and other kinds of damages but allow Nolt to withhold payment only until Umoja remedies any construction problem. Including those potential damages as "sums due" would render §§4.4 and 4.5 superfluous. *Porter*, 204 A.3d at 419.

28. An interpretation of the contract that gives force to all its terms better reflects the intentions of the parties. *Id*. By referencing "sums due," §4.3 addresses a situation in which Nolt had taken over compensating one of Umoja's subcontractors. Section 4.3 did not authorize Nolt to retain the proceeds of the joint uncashed check or maintain all progress payments for steel in escrow once the construction had been completed to Nolt's satisfaction.

29. Once Umoja completed its work to Nolt's satisfaction, Nolt was no longer permitted to withhold progress payments under §§4.3, 4.4 and 4.5 of the Umoja subcontract.

30. Nolt was not permitted to withhold progress payments from Umoja past the date Umoja had completed its work in March 2017, despite the City's threats of actual and liquidated damages, because the provisions permitting Nolt to recover backcharges and liquidated damages from Umoja specifically permit "recover[y]" and "reimburse[ment]," not withholding. *Id*. §§11.1(c), 14.1, 16.4.1.

31. To the extent that "damages or claims" extend beyond the end of a project, the Umoja subcontract allows Nolt to withhold only final payment. *Id*. §22.4. ("If there are any damages or claims of any kind or nature that have not been settled or discharged when the Work is finished, final settlement between [Nolt] and [Umoja], final payment under the Subcontract, and acceptance of the Work, shall be deferred").

32. "Final Payment" is a defined term in the Umoja subcontract. *Id*. Art. 5.

28. The Standard City Contract requires Final Payment to consist of at least a 5% Retainage. Ex. 129 §§55. Required retainages diminish as work progresses, but are no greater than 10%. *Id*.

29. Nolt's contract with the City was incorporated into the Umoja subcontract. Umoja subcontract, Section A ("The Subcontractor covenants . . . in strict accordance with the

Contract Purchase Order between the Contractor and Owner dated August 20, 2015 and the Assignment/Contract with the Philadelphia Municipal Authority (PMA), all of which are hereby made a part of this Subcontract by reference.").

30. Once construction on the project was completed to Nolt's satisfaction, it was required to pass on whatever progress payment it had received for Umoja's services to Umoja, but could retain final payment until the City was satisfied. Id. §§4.1.2, 4.4, 4.5, 5.1, 5.3, 11.1(c)., 16.4.1, 22.4.

31. Nolt breached its contractual obligations to Umoja by keeping funds in excess of the Retainage in escrow beyond the date construction was completed and by continuing to possess the funds reflected in the $75,000.00 set aside for steel erection.

32. Because Nolt received 85.5% of its steel charges from the City, it was required to pay 85.5% of the steel; invoices to Umoja. Umoja subcontract, §4.1.1; RCC subcontract at 3 ("Payment").

33. D.A. Nolt is obligated to pay Umoja 85.5% of the contracted coordination fee of $30,000.00 or $16,387.50 ($25,650.00 less $9,262.71 already paid)

34. D.A. Nolt is obligated to pay Umoja 85.5% of the time and materials billed in invoices 545 and 550-571, namely ($272,678.71 x 85.5%) $233,140.29.

35. Pursuant to the Prompt Pay Act, D.A. Nolt owes Umoja prejudgment interest (6% per annum) beginning on March 21, 2017 until the date of payment. 62 Pa.C.S. §3932©.

36. D.A. Nolt is liable to Umoja Erectors for a total $239,527.79 with 6% interest from March 21, 2017.

WHEREFORE, the Court finds in favor of Umoja Erectors in an amount of damages of $239,527.79 with back interest at 6% interest from March 21, 2017.

                                              BY: /s/ Tsiwen M. Law
                                                Tsiwen M. Law, Esquire
                                                LAW & ASSOCIATES, LLC
                                                Atty. I.D. No. 40960
                                                The North American Building
                                                121 S. Broad Street, 18th Floor
                                                Philadelphia, PA  19107
                                                Telephone No. 215-751-0500
                                                 E-Mail: (tsiwenlaw88@gmail.com)